UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

REBECCA P.,[1]

    **Plaintiff,**

v.

MARTIN O'MALLEY,
**Commissioner of Social Security,**

    **Defendant.**

Case No. 3:22-cv-1869
Magistrate Judge Norah McCann King

**OPINION AND ORDER**

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Rebecca P. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* Plaintiff appeals from the final decision of the Commissioner of Social Security denying that application.[2] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court the Court reverses the Commissioner's decision and remands the matter for further proceedings.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.

[2] Martin O'Malley, the current Commissioner of Social Security, is substituted as Defendant in his official capacity.

1

I.      PROCEDURAL HISTORY

On June 12, 2019, Plaintiff filed her application for benefits, alleging that she has been disabled since July 7, 2017. R. 170, 186, 273–74.[3] The application was denied initially and upon reconsideration. R. 189–93, 19–97. Plaintiff sought a *de novo* hearing before an administrative law judge ("ALJ"). R. 198–99. ALJ Kenneth Ayers held a hearing on November 16, 2020, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 100–38. In a decision dated February 22, 2021, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time from July 7, 2017, Plaintiff's alleged disability onset date, through March 31, 2019, the date on which Plaintiff was last insured for benefits. R. 16–26. That decision became final when the Appeals Council declined review on February 3, 2022. R. 1–7. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On April 24, 2023, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 16.[4] On May 8, 2023, the case was reassigned to the undersigned. ECF No. 17. The matter is ripe for disposition.

II.     LEGAL STANDARD

   A.      **Standard of Review**

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204

---

[3] Plaintiff previously filed an application for disability insurance benefits on June 13, 2014. R. 142. That application was denied on July 6, 2017, R. 139–57, and Plaintiff did not appeal from that decision.

[4]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

F.3d 78, 83 (3d Cir. 2000). In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g). The United States Supreme Court has explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g., Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

3

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ's decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121

("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is

disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518.

**B.      Sequential Evaluation Process**

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 404.1520(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b).  If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id*. at § 404.1509. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

### III. ALJ DECISION AND APPELLATE ISSUES

Plaintiff was 37 years old on July 7, 2017, *i.e.*, the date on which she was last insured for benefits. R. 25. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between her alleged disability onset date and that date. R. 19.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: degenerative disc disease of the lumbar spine, internal derangement and degenerative disc disease of the right knee, psoriatic arthritis, mixed connective tissues disease, and fibromyalgia. *Id*. The ALJ also found that Plaintiff's depression and anxiety were not severe and that her documented history of multiple sclerosis was not a medically determinable impairment. R. 19–21.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 21.

At step four, the ALJ found that Plaintiff had the RFC to perform light work subject to

7

various additional limitations. R. 21–25. The ALJ also found that this RFC permitted the performance of Plaintiff's past relevant work as a bakery helper. R. 24–25.

Alternatively, at step five, the ALJ relied on the testimony of the vocational expert to find that a significant number of jobs–*e.g.*, jobs as a school bus monitor, an usher, and an investigator–existed in the national economy and could be performed Plaintiff despite her lessened capacity. R. 25–26. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from July 7, 2017, her alleged disability onset date, through March 31, 2019, the date on which she was last insured. R. 26.

Plaintiff disagrees with the ALJ's findings at steps two and four and asks that the decision of the Commissioner be reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings. *Plaintiff's Brief,* ECF No. 10; *Plaintiff's Reply Brief*, ECF No. 14. The Commissioner takes the position that his decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 13.

**IV.    SUMMARY OF RELEVANT MEDICAL EVIDENCE**

On June 27, 2019, Richard Marino, D.O., Plaintiff's primary care physician, completed a five-page, check-the-box and fill-in-the-blank form entitled, "Multiple Impairment Questionnaire." R. 644–48 ("2019 opinion"). Dr. Marino stated that he had treated Plaintiff every three months beginning on December 21, 2012, and most recently on June 20, 2019. R. 644. Dr. Marino diagnosed Plaintiff with fibromyalgia, mixed connective tissue disease ("MCTD"), and degenerative disc disease of the lumbar and cervical spines. *Id*. Dr. Marino opined that Plaintiff's impairments were expected to last at least 12 months. *Id*. He identified

8

Plaintiff's symptoms as chronic pain and weakness and described Plaintiff's pain as "constantly present daily, lasting all day" that was "chronic & debilitating, which consists of aching burning, sharp nerve pain" located "above/below waist, cervicle [sic] spine, trapezius, glutes & inner ankle & foot[.]" R. 645. Plaintiff's pain is precipitated and/or aggravated by lack of sleep; sitting; standing; walking; twisting; and bending. *Id*. Plaintiff's prescribed medication had been changed from escitalopram oxalate to bupropion because of weight gain that contributed additional pain to her existing joint pain. *Id*. According to Dr. Marino, "No finances tend to hinder Pt's frequency of being able to see doctors as much as is necessary, causing a cap in between visits seeing her primary for symptomatic relief. Plateaus have also been [illegible] with certain treatment, physical therapy[.]" *Id*. However, on the next page, Dr. Marino circled the answer "Yes" when asked whether Plaintiff's course of treatment was consistent with the symptoms and limitations in the questionnaire. R. 646. Dr. Marino opined that, in an eight-hour workday, Plaintiff could perform a job in a seated position and a job standing and/or walking for less than one hour. *Id*. Plaintiff should avoid continuous sitting in an eight-hour day and she should arise from a seated position every 20 minutes and move around for 20 minutes before returning to a seated position. *Id*. Dr. Marino also opined that it was medically necessary for Plaintiff to elevate both her legs at "Waist level Six inches or less" every 20 minutes for 10 minutes. *Id*. Plaintiff could occasionally (up to 1/3 of an eight-hour day) lift and carry up to 10 pounds. *Id.* She could occasionally grasp, turn, and twist objects with her hands, but could never use her hands/fingers and arms for fine manipulations or reaching (including overhead reaching). R. 647. Dr. Marino further opined that Plaintiff's symptoms were likely to increase if she were placed in a competitive work environment because of fatigue, lack of concentration, "fibro fog", anxiety, and inconsistent sleep due to her joint and nerve pain, and that in an average eight-hour workday

9

Plaintiff's pain, fatigue, or other symptoms would be severe enough to interfere with her attention and concentration. *Id*. He also opined that Plaintiff would need to take unscheduled breaks "on a good day – every 30 min", with each break lasting "10-20 min depending on pain[.]" *Id*. Further, Plaintiff was likely to be absent from work as a result of her impairments or treatment more than three times per month. R. 648. Dr. Marino denied that Plaintiff had good days and bad days. *Id*. Dr. Marino answered in the affirmative when asked if emotional factors contribute to the severity of Plaintiff's symptoms and functional limitations, explaining that "a substantial amount of my pts depression/anxiety comes from dealing [with] chronic pain every day that is worsening rather than improving plays a major part of emotional factors on [illegible] lack of sleep[.]" *Id*. Dr. Marino also answered in the affirmative when asked if Plaintiff's symptoms and related limitations as detailed in this questionnaire apply as far back as July 7, 2017, and whether Plaintiff's symptoms and functional limitations detailed in the questionnaire were reasonably consistent with the clinical and/or objective findings discussed in this report. *Id*.

On September 28, 2020, Dr. Marino again completed a five-page, check-the-box and fill-in-the-blank form entitled, "Multiple Impairment Questionnaire." R. 867–71 ("2020 opinion"). Dr. Marino stated that he treated Plaintiff every three months beginning on December 21, 2012, and most recently on September 28, 2020. R. 867. Dr. Marino diagnosed fibromyalgia, MCTD, and degenerative disc disease of the lumbar and cervical spines and referred to "Rheumatology and Pain Management" to support these diagnoses. *Id*. Dr. Marino opined that Plaintiff's impairments were expected to last at least 12 months. *Id*. He identified Plaintiff's symptoms as chronic pain and weakness, explaining as follows: "pain is chronic & debilitating[;] consists of burning, aching, & sharp nerve pain" "[a]bove/below waist, cervical spine, trapezius lumbar spine." R. 868. Dr. Marino identified lack of sleep, sitting, standing, walking, twisting, and

10

bending as precipitating and/or aggravating Plaintiff's pain. *Id*. Dr. Marino again noted that Plaintiff's medication had been changed from escitalopram oxalate to bupropion because of "extreme weight gain" that contributed to "more pain in joints." *Id*. Dr. Marino again stated that "finances hinder patient's frequency of being able to see the Dr. as much as necessary[.]" *Id*. Dr. Marino opined that, in an eight-hour workday, Plaintiff could perform a job in seated position and a job standing and/or walking for two hours. R. 869. Plaintiff must avoid continuous sitting in an eight-hour day and must get up from a seated position every 20 minutes and move around for 20 minutes before returning to a seated position. *Id*. It was medically necessary for Plaintiff to elevate both her legs at "Waist level Six inches or less" every 20 minutes. *Id*. According to Dr. Marino, Plaintiff could occasionally (up to 1/3 of an eight-hour day) lift and carry up to 10 pounds. *Id.* Plaintiff could occasionally grasp, turn, and twist objects with her hands, but could never use her hands/fingers and arms for fine manipulations or reaching (including overhead reaching). R. 870. Plaintiff's symptoms were likely to increase if she were placed in a competitive work environment because of fatigue, lack of concentration, "fibro fog", anxiety, and inconsistent sleep due to joint and nerve pain, and that in an average eight-hour workday Plaintiff's experience of pain, fatigue, or other symptoms would be severe enough to interfere with her attention and concentration. *Id*. He also opined that Plaintiff would need to take unscheduled breaks "on a good day – every 30 min" lasting "10-20 min depending on pain[.]" *Id*. Dr. Marino further opined that Plaintiff was likely to be absent from work as a result of her impairments or treatment more than three times a month. R. 871. Dr. Marino denied that Plaintiff had good days and bad days. *Id*. Dr. Marino answered in the affirmative when asked if emotional factors contribute to the severity of Plaintiff's symptoms and functional limitations, referring to "depression & anxiety from chronic pain and lack of sleep due to pain[.]" *Id*. Dr. Marino also

11

answered in the affirmative when asked if Plaintiff's symptoms and related limitations as detailed in this questionnaire apply as far back as July 7, 2017, and whether Plaintiff's symptoms and functional limitations detailed in the questionnaire were reasonably consistent with the clinical and/or objective findings discussed in this report. *Id.*

V.   **DISCUSSION**

Plaintiff argues that the ALJ erred in evaluating the opinions of, *inter alios*, Plaintiff's primary care physician, Dr. Marino. *Plaintiff's Brief*, ECF No. 10, pp. 19 – 27; *Plaintiff's Reply Brief*, ECF No. 14, PAGEID#1042–44. For the reasons that follow, this Court agrees, but for reasons different than those raised by Plaintiff. *Cf. Jennings o/b/o Thomas v. Saul*, No. CV 20-1953, 2021 WL 601097, at *2-3 (E.D. Pa. Feb. 16, 2021), *reconsideration denied sub nom. Jennings o/b/o Thomas v. Saul*, No. CV 20-1953, 2021 WL 1175134 (E.D. Pa. Mar. 29, 2021) ("This unexplained mistake is a clear, reversible error that this court has addressed *sua sponte*.") (citations omitted); *McNeal v. Comm'r of Soc. Sec.*, No. CIV.A. 10-318-J, 2012 WL 1038898, at *3 (W.D. Pa. Mar. 28, 2012) ("The Court does not reach any of the issues raised by Plaintiff but finds that remand is warranted on grounds not raised by the parties.").

An ALJ must evaluate all record evidence in making a disability determination. *Plummer*, 186 F.3d at 433; *Cotter,* 642 F.2d at 704. The ALJ's decision must include "a clear and satisfactory explication of the basis on which it rests" sufficient to enable a reviewing court "to perform its statutory function of judicial review." *Cotter*, 642 F.2d at 704–05. Specifically, the ALJ must discuss the evidence that supports the decision, the evidence that the ALJ rejected, and explain why the ALJ accepted some evidence but rejected other evidence. *Id*. at 705–06; *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 505–06 (3d Cir. 2009); *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001) ("Although we do not expect the ALJ to make reference to every relevant

treatment note in a case . . . we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law."). Without this explanation, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705; *see also Burnett,* 220 F.3d at 121 (citing *Cotter*, 642 F.2d at 705).

For claims filed after March 27, 2017,[5] the regulations eliminated the hierarchy of medical source opinions that gave preference to treating sources. *Compare* 20 C.F.R. § 404.1527 *with* 20 C.F.R. § 404.1520c(a) (providing, *inter alia*, that the Commissioner will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources"). Instead, the Commissioner will consider the following factors when considering all medical opinions: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treating examination, the frequency of examinations, and the purpose of the treatment relationship; (4) the medical source's specialization; and (5) other factors, including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. § 404.1520c(c).

The regulation emphasizes that "the most important factors [that the ALJ and Commissioner] consider when [] evaluat[ing] the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section)." *Id*. at § 404.1520c(a). As to the supportability factor, the regulation provides that "[t]he more relevant the objective medical evidence and

---

[5] As previously noted, Plaintiff's claim was filed on June 12, 2019.

13

supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id*. at § 404.1520c(c)(1).  As to the consistency factor, the regulation provides that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id*. at § 404.1520c(c)(2).

The applicable regulation further requires the ALJ to articulate his "consideration of medical opinions and prior administrative medical findings" and articulate in the "determination or decision how persuasive [he] find[s] all of the medical opinions and all of the prior administrative medical findings in [the claimant's] case record." *Id*. at § 404.1520c(b).

At step four of the sequential evaluation process, the ALJ in this case determined that Plaintiff had the RFC to perform a limited range of light work:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b), except the claimant can occasionally handle, finger and reach overhead bilaterally. Additionally, the claimant can occasionally climb ramps and stairs, but never climb ladders, ropes or scaffolds. The claimant can occasionally balance, stoop, crouch, kneel and crawl. Furthermore, the claimant can never work at unprotected heights, or work around hazardous moving mechanical parts.

R. 21. In making this determination, the ALJ found, *inter alia*, that Dr. Marino's 2019 and 2020 opinions were not persuasive, reasoning as follows:

> In a medical source statement dated June 27, 2019, Richard Marino, D.O., opined that inter alia, the claimant was limited to sitting up to one hour in an eight-hour workday and standing and/or walking up to one hour in an eight-hour workday (Ex. B12F, 3). Additionally, the claimant had to avoid continuous sitting and had to get up from a seated position every twenty minutes for twenty minutes. The claimant had to elevate the legs while sitting at waist level every twenty minutes for ten minutes (Ex. B12F, 3). Furthermore, the claimant was limited to lifting and carrying

14

>up to ten pounds (Ex. B12F, 4). The claimant was limited to occasionally grasping, turning and twisting objects with the bilateral hands, could never use hands or fingers for fine manipulation or use arms for reaching, including overhead (Ex. B12F, 4). Dr. Marino opined that the claimant's pain, fatigue or other symptoms would frequently interfere with her attention and concentration, and the claimant would require unscheduled breaks every thirty minutes on a good day for ten to twenty minutes (Ex. B12F, 4). Lastly, Dr. Marino opined that on average the claimant would be absent from work more than three times a month (Ex. B12F, 5). Similarly, in a medical source statement dated September 28, 2020, Dr. Marino opined that the claimant was limited to less than sedentary exertional work, with inability to perform fine manipulation, reach including overhead while being absent more than three times a month (Ex. B22F, 3-5). In making a disability determination, the undersigned finds these opinions are not persuasive. While Dr. Marino is a treatment physician, the restrictive limitations are not supported by the record, which shows generally mild diagnostic and clinical findings. Additionally, *the opinions are in the form of a check boxes and lack sufficient explanations or citation to the medical record in support*.

R. 23 (emphasis added).

Substantial evidence does not support the ALJ's evaluation of Dr. Marino's 2019 and 2020 opinions. The ALJ discounted these opinions because, *inter alia*, "the opinions are in the form of a check boxes and lack sufficient explanations or citation to the medical record in support." *Id*. However, the ALJ failed entirely to acknowledge that each of these opinions refers to a contemporaneous or nearly contemporaneous examination. R. 644 (June 27, 2019 opinion referring to an examination on June 20, 2019, R. 656-61), 867 (September 28, 2020 opinion referring to an examination on September 28, 2020, 924-30). The ALJ's justification for discounting the 2019 and 2020 opinions as simply check-box evidence lacking explanation therefore overlooks or mischaracterizes the medical record in this regard. Although an ALJ is authorized to determine the credibility of evidence, and to weigh opinion evidence, an ALJ cannot reject evidence for the wrong reason or when it relies on a mischaracterization of the record. *See Sutherland v. Comm'r Soc. Sec*., 785 F. App'x 921, 928 (3d Cir. 2019) ("[T]he ALJ still may choose whom to credit but 'cannot reject evidence for no reason or the wrong reason.'")

15

(quoting *Morales*, 225 F.3d at 317); *Cotter*, 642 F.2d at 706−07 ("Since it is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason, [] an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper.") (citations omitted).

Accordingly, this Court cannot conclude that substantial evidence supports the ALJ's rejection of Dr. Marino's 2019 and 2020 opinions, particularly where the limitations found by Dr. Marino are inconsistent with the RFC found by the ALJ. R. 21, 644–48, 867–71. Moreover, the ALJ's error in evaluating Dr. Marino's opinions cannot be viewed as harmless where, as here, the vocational expert testified, *inter alia*, that the limitations opined by Dr. Morino would be work preclusive. R. 134-37.

Because the ALJ erred in rejecting Dr. Morino's opinions as lacking explanation, without considering the doctor's contemporaneous treatment records, this Court concludes that the matter must be remanded to the Commissioner for further consideration. It is the Commissioner— not this Court —who must consider and evaluate the evidence in the first instance. *Zied v. Astrue*, 347 F. App'x 862, 865–66 (3d Cir. 2009) ("When an ALJ does not address all of the evidence of record, the appropriate action is to remand for further proceedings, as a District Court has no fact-finding role in reviewing social security disability cases.") (citing *Hummel v. Heckler*, 736 F.2d 91, 93 (3d Cir. 1984)); *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005) ("In the process of reviewing the record for substantial evidence, we may not 'weigh the evidence or substitute [our own] conclusions for those of the fact-finder[.]'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)); *Grant v. Shalala*, 989 F.2d 1332, 1338 (3d Cir. 1993) (stating that the Social Security Act "creates a scheme in which a district court may conduct a

restricted review of the [Commissioner's] findings and may remand a case for new findings, but this scheme makes no provision for a district court to make any findings of its own").[6]

This Court therefore concludes that remand of the matter for further consideration of these issues is appropriate. Moreover, remand is appropriate even if, upon further examination of Dr. Marino's 2019 and 2020 opinions and the RFC determination, the ALJ again concludes that Plaintiff is not entitled to benefits. *Cf. Zied*, 347 F. App'x at 865–66; *Rutherford*, 399 F.3d at 552; *Grant*, 989 F.2d at 1338; *Zuschlag v. Comm'r of Soc. Sec. Admin.*, No. 18-CV-1949, 2020 WL 5525578, at *8 (D.N.J. Sept. 15, 2020) ("On remand, the ALJ may reach the same conclusion, but it must be based on a proper foundation."); *Jiminez v. Comm'r of Soc. Sec.*, No. CV 19-12662, 2020 WL 5105232, at *4 (D.N.J. Aug. 28, 2020) ("Once more, the ALJ did not provide an adequate explanation that would enable meaningful review, and the Court once more cannot determine what role lay speculation played in the ALJ's rejection of this detailed functional assessment from Dr. Marks."); *Cassidy v. Colvin*, No. 2:13-1203, 2014 WL 2041734, at *10 n.3 (W.D. Pa. May 16, 2014) ("Nevertheless, that the ALJ may have misinterpreted or misunderstood Dr. Kaplan's findings with regard to Plaintiff's postural activities does not absolve her of her error. Rather, it highlights the need for an ALJ to fully explain her findings.

---

[6] Plaintiff asserts other errors in the Commissioner's final decision. Because the Court concludes that the matter must be remanded for further consideration of Dr. Marino's 2019 and 2020 opinions and the RFC, the Court does not consider those claims. However, the Court notes that, in challenging the opinion of Richard Haddad, M.D., Plaintiff represents that Dr. Haddad stated that the symptoms and limitations in his opinion were present since Plaintiff's alleged disability onset date of July 2017. *Plaintiff's Brief*, ECF No. 10, p. 15 (citing R. 878); *Plaintiff's Reply Brief*, ECF No. 14, PAGEID#1042 (citing R. 878). Although not noted by Plaintiff, the Commissioner, or the ALJ, Dr. Haddad in fact *denied* that Plaintiff's symptoms and related limitations applied as far back as July 7, 2017; the doctor instead stated that Plaintiff's symptoms and limitations applied only as of November 5, 2019, Plaintiff's first day of treatment with Dr. Haddad and more than seven months after the date on which Plaintiff was last insured for benefits. R. 873, 878, 880, 885.

Otherwise, the district court is left to engage in this sort of speculation about how an ALJ arrived at her decision.").

## VI.    CONCLUSION

For these reasons, the Court **REVERSES** the Commissioner's decision and **REMANDS** the matter for further proceedings consistent with this *Opinion and Order*.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**


Date:  April 17, 2024                                         *s/Norah McCann King*
                                                             NORAH McCANN KING
                                                      UNITED STATES MAGISTRATE JUDGE